## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

---

**THE ESTATE OF ESTATE OF BRIAN COLLINS**
by **DAVE LANG, Special Administrator,**
        and
**BREON JAESHAUN GORDON-COLLINS, (A Minor)**
**AJANAE EMANI GORDON-COLLINS, (A Minor)**          **Case No.**
**BRANDON AESHAUN GORDON-COLLINS (A**
**Minor) and CAHRON JAYAIR GORDON-COLLINS. (A**
**pMinor)**
                    **Plaintiffs,**
        **v.**
**MILWAUKEE COUNTY**, a municipal corporation,
        **And**
**C.O. PALMER; LT. ARTUS; C.O. S. JOHNSON; C.O.**
**DERRICK SPIDELL; C.O. TABATHA BLOMBERG;**
**and, C.O. JEFF ANDRYKOWSKI;** 901 N. 9th Street, Room
306
Milwaukee, WI 53223
        **and**
**WISCONSIN COUNTY MUTUAL INSURANCE**
**CORPORATION**
c/o Registered Agent, David Bisek
Aegis Corporation
18850 W. Capitol Drive
Brookfield, WI 53045
        **and**
**ARMOR CORRECTIONAL HEALTH SERVICES, INC**.;
and **N.P. JACQUELINE ALOMEPE; NURSING**
**SUPERVISOR LYNDA KARASZEWSKI; R.N. LIANA**
**GRAMZA; DR. JONATHON BRODY;**
c/o Registered Agent, C T Corporation System,
8020 Excelsior Drive, Ste. 200
Madison, WI 53717
        **And**
**EVANSTON INSURANCE COMPANY**;
125 S Webster St.
Madison, WI 53703-3474; and,
**INJURED PATIENTS AND FAMILIES**
**COMPENSATION FUND**;
125 Webster St.
Madison, WI 53703

                    **Defendants.**

## COMPLAINT

NOW COMES the above named plaintiffs, the Estate of Brian Collins, and Breon Jaeshaun Gordon-Collins (a minor), Ajanae Emani Gordon-Collins, (a minor) Brandon Aeshaun Gordon-Collins (a minor)and Cahron Jayair Gordon-Collins (a minor), by their attorneys, **GENDE LAW OFFICE, S.C.**, and as for their claims for relief against the above named defendants, allege and shows the Court as follows:

## I. INTRODUCTION

1. This case involves Milwaukee County ("MC"), Armor Correctional Health Services, Inc. ("Armor"), and the individually named Defendants' methods of infringing on and violating the Constitutional, Civil, and/or Statutory Rights of Brian Collins ("Collins") causing Collins to unnecessarily suffer damages, injures and ultimately his death. While under the Defendants' care and custody Collins was subjected to deliberate indifference which amounted to inadequate and unconstitutional health care in conjunction with the wanton and unnecessary infliction of pain and ultimately death.

2. On December 18, 2018 Collins was in serious-acute-obvious physical distress while in custody at the Milwaukee County Jail, but he was not given timely, proper medical assistance.

3. Plaintiffs bring this action pursuant to Wis. Stat. § 895.03; Title 42 of the United States Code, Sections 1983 & 1985 for violations of the Collins' Eighth and Fourteenth Amendment rights under the United States Constitution and his rights under Article I, Sections One and Six, of the Wisconsin Constitution.

4. Plaintiffs bring this action under the United States Constitution, particularly under the provisions of the, *inter alia,* Fourth, Eighth, and Fourteenth Amendments; Title 42 of the United

States Code Sections 1983 and 1985; Articles I, Sections One and Six of the Wisconsin Constitution; and, pursuant to Wis. Stat. §§ 895.03.

## II. JURISDICTION

5.. That this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and Laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' civil rights.

6. That this Court has supplemental jurisdiction over all state law claims which arise out of the same facts common to Plaintiffs' federal claims pursuant to 28 U.S.C. § 1367.

7. That the amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interests, and attorneys' fees.

## III. VENUE

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because most Defendants reside in this district and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## IV. THE PARTIES

9. The plaintiff, the Estate of Brian Collins represents the decedent Brian Collins, who serious-acute-obvious medical needs were neglected while he was in the custody of MPD/MCSD and therefore expired at Froedtert Memorial Lutheran Hospital.

10. Dave Lang is the administrator of the Estate of Brian Collins with standing to bring this action on behalf of the Estate of Brian Collins pursuant to Wisconsin Statute and Milwaukee County Case No:2021PR959.

11. The plaintiff, Breon Jaeshaun Gordon-Collins, is the minor child of Brian Collins and is a citizen of the United States and a resident of the State of Wisconsin.

12.     The plaintiff, Ajanae Emani Gordon-Collins is the minor child of Brian Collins and is a citizen of the United States and a resident of the State of Wisconsin.

13.     The plaintiff, Brandon Aeshaun Gordon-Collins is the minor child of Brian Collins and is a citizen of the United States and a resident of the State of Wisconsin.

14.     The plaintiff, Cahron Jayair Gordon-Collins is the minor child of Brian Collins and is a citizen of the United States and a resident of the State of Wisconsin.

15.     Defendant Correctional Officer S. Johnson ("Johnson"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Johnson was employed as a Correctional Officer at Criminal Justice Facility ("CJF") by Milwaukee County ("MC") and the Milwaukee County Sheriff's Office ("MCSO") and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins, in December of 2018. Johnson was assigned to the CJF jail clinic where Collins was taken on December 18, 2018 and was directly responsible for monitoring Collins. Johnson ignored Collins' serious medical condition requiring emergency care after he had been transported to the jail clinic in a wheel chair suffering from a medical emergency. At all times material hereto, Johnson was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

16.     Defendant Correctional Officer Derrick Spidell ("Spidell"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Spidell was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins, in December of 2018. Spidell was assigned to transport Collins to the emergency room after Collins medical emergency on December 18, 2018, but failed to timely transport Collins. Spidell ignored

Collins' serious medical condition requiring emergency care requiring immediate transport to the emergency room because of Collins' medical emergency. At all times material hereto, Spidell was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

17. Defendant Correctional Officer Blomberg ("Blomerg"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Blomerg was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins, in December of 2018. Blomerg was assigned to transport Collins to the emergency room after Collins medical emergency on December 18, 2018, but failed to timely transport Collins. Blomerg ignored Collins' serious medical condition requiring emergency care requiring immediate transport to the emergency room because of Collins' medical emergency. At all times material hereto, Blomerg was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

18. Defendant C.O. Jeff Andrykowski ("Andrykowski"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Andrykowski was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018. Andrykowski observed Collins suffering from a medical emergency on December 18, 2018 in his jail cell requiring wheel chair transportation to the jail clinic. At all times material hereto, Andrykowski failed to recognize the further emergent nature of Collins' dire medical condition and made no attempt to contact emergency medical services. During that time period of

5

inaction, Andrykowski was acting under color of state law, within the scope of his employment and authority, and acting, at times, pursuant to MC's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

19.     Defendant C.O. Palmer ("Palmer"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Palmer was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018. Palmer was advised Collins was suffering from a medical emergency on December 18, 2018 in his jail cell, but failed to immediately respond and instead completed regular rounds before reporting to Collins' cell.   Ultimately, Collins' required wheel chair transportation to the jail clinic. At all times material hereto, Palmer failed to recognize the further emergent nature of Collins' dire medical condition and made no attempt to contact emergency medical services.  During that time period of inaction, Palmer was acting under color of state law, within the scope of his employment and authority, and acting, at times, pursuant to MC's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

20.     Defendant Lt. Artus ("Artus"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Artus was employed as a supervisor at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018.  Artus was advised Collins was suffering from a medical emergency on December 18, 2018 in his jail cell, but failed to call for emergency medical transportation despite Collins' clear medical emergency occurring directly in front of Artus on the morning in question.   Ultimately, Collins' required wheel chair transportation

6

to the jail clinic. At all times material hereto, Artus failed to recognize the further emergent nature of Collins' dire medical condition and made no attempt to contact emergency medical services. During that time period of inaction, Artus was acting under color of state law, within the scope of his employment and supervisory authority, and acting, at times, pursuant to MC's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

21.     Defendant N.P. Jacqueline Alomepe ("Alomepe"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Alomepe was employed as a Nurse Practitioner at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018. Alomepe was advised Collins was suffering a medical emergency, but failed to timely address that emergency after determining emergent hospital care was required. Alomepe's delay in securing immediate emergency ambulance care and failure to treat Collins prior to the ambulance arrival resulted in his needless pain, suffering and ultimate death. At all times material hereto, Alomepe was acting under color of state law, within the scope of his employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

22.     Defendant R.N. Supervisor Lynda Karaszewski ("Karaszewski") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Karaszewski was employed as a registered nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018. Karaszewski received an emergency call/nursing alert that Collins was suffering from a medical emergency. She responded to Collins' medical emergency and observed him suffering a medical emergency. Collins failed to respond to the jail provided medical care and continued to

7

suffer from a medical emergency. Karaszewski failed to secure immediate transport to hospital facility to address Collins' medical emergency, but instead allowed Collins to endure unnecessary pain, suffering and ultimately death. At all times material hereto, Karaszewski was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

23. Defendant R.N. Liana Gramza ("Gramza") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Gramza was employed as a registered nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018. Gramza received an emergency call/nursing alert that Collins was suffering from a medical emergency. She responded to Collins' medical emergency and observed him "seizing." Collins failed to respond to the jail provided medical care and continued to suffer from a medical emergency. Gramza failed to secure immediate transport to hospital facility to address Collins' medical emergency, but instead allowed Collins to endure unnecessary pain, suffering and ultimately death. At all times material hereto, Gramza was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

24. Defendant Jail R.N. Supervisor Candace Dzieozic ("Dzieozic") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Dzieozic was employed as a registered nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018. Dzieozic received an emergency call/nursing alert that Collins was suffering from a medical

emergency. She observed him suffering a medical emergency. Collins failed to respond to the jail provided medical care and continued to suffer from a medical emergency. Dzieozic failed to secure immediate transport to hospital facility to address Collins' medical emergency, but instead allowed Collins to endure unnecessary pain, suffering and ultimately death. At all times material hereto, Karaszewski was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

25.    Defendant Dr. Jonathon Brody ("Dr. Brody") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Dr. Brody was employed as a medical doctor at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Collins in December of 2018. Dr. Brody evaluated Collins' for a medical emergency the day before his death and failed to implement a treatment plan, failed to properly diagnose Collins' emergent medical condition, and failed to provide necessary care to diagnose and treat Collins' medical emergency. Collins continued to deteriorate over the course of the next day from his medical emergency. Dr. Brody failed to secure immediate transport to hospital facility to address Collins' medical emergency, but instead allowed Collins to endure unnecessary pain, suffering and ultimately death. At all times material hereto, Dr. Brody was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

26.    Defendant Milwaukee County, ("MC") with offices of its executive at 901 N. 9th Street, Suite 306, Milwaukee, Wisconsin 53233, and offices of its Corporate Counsel, located at 901 N. 9th Street, Suite 303, Milwaukee, Wisconsin 53233, at all times material hereto, was a Municipal

Corporation organized under the laws of the State of Wisconsin. MC established, operated and maintained the CJF and at all times material hereto, MC was responsible for training and supervising the employees of the MCSO, the creation and implementation of policies and procedures at the CJF, ensuring the MCSO was in compliance with the Consent Decree, and had control and authority over contracts with Armor.

27. Defendant, Wisconsin County Mutual Insurance Corporation is a domestic insurance company whose registered agent for service of process is David Bisek, Aegis Corporation, 18550 W. Capitol Drive, Brookfield, WI 53045, and is primarily engaged in the business of insurance. At all times relevant hereto, Wisconsin County Mutual Insurance Corporation provided insurance to MC and MC employees, agents, officers and representatives, insuring against liability imposed by law rising out of negligent conduct and/or constitutional violations and further insuring the defendants against any damages they might be liable to others by virtue of the negligent conduct and/or constitutional violations; that said policy or policies of insurance were in full force and effect at the time of the events that are subject of this lawsuit; that in said contract(s) of insurance Wisconsin County Mutual Insurance Corporation reserved the right settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims and has a direct interest in this litigation; that by virtue of the laws of the State of Wisconsin, Wis. Stat. § 803.04(2)(a), Wisconsin County Mutual Insurance Corporation is a property defendant herein for any named and/or unnamed employee of MC or MCSO held responsible for the suffering and death of Brian Collins.

28. Defendant Armor Correctional Health Services, Inc. ("Armor"), with its Principal Office located at 4960 S.W. 72nd Avenue, Suite #400, Miami, FL 33155, and Registered Agent being C T Corporation System whose address is 8020 Excelsior Dr., Ste. 200, Madison, WI 53717, is a Florida Corporation, incorporated under the laws of the State of Florida, operating in the State of

Wisconsin for purposes of providing medical care at correctional facilities, and is responsible for the acts of its employees and agents involved in health care services provided to patients therein. At all times material hereto, Armor Correctional provided health care services to inmates at CJF under color of state law, including Collins.

29. Evanston Insurance Company is a foreign insurance corporation duly conducting business in the State of Wisconsin and is engaged in the business of, among other things, issuing policies of insurance within the State of Wisconsin, with a business address of Ten Parkway North, Deerfield, IL 60015 with offices of its registered agent, Aegis Corporation located at 18550 W. Capitol Dr., Brookfield, WI 53045. Upon information and belief, prior to and including all relevant times hereto, Evanston Insurance Company issued a policy of liability insurance to Armor and all employees and/or agents thereof. By the terms of said policy, Evanston Insurance Company agreed to pay any and all sums for which Armor and/or employees and agents thereof might be held legally liable for injuries or damages caused by Armor and/or employees and agents thereof. Upon information and belief, said policy was in full force and effect during all time periods relevant hereto. Pursuant to Wis. Stat. § 803.04, Evanston Insurance Company is a proper party to this action herein for any named and/or unnamed Armor employee held responsible for the suffering and death of Brian Collins.

30. Defendant, Wisconsin Health Care Liability Insurance Plan is a Wisconsin insurance company whose address is 125 S. Webster St., Madison, WI 53703-3474, who is primarily engaged in the business of insurance. At all times relevant hereto, Wisconsin Health Care Liability Insurance Plan provided insurance to DR. JONATHON BRODY amongst others, insuring against liability imposed by law rising out of negligent conduct and/or constitutional violations and further insuring the defendants against any damages they might be liable to others by virtue of the negligent conduct and/or unconstitutional violations; that said policy or policies of insurance were in full

force and effect at the time of the events that are subject of this lawsuit; that in said contract(s) of insurance Wisconsin Health Care Liability Insurance Plan reserved the right settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims and has a direct interest in this litigation; that by virtue of the laws of the State of Wisconsin, Wis. Stat. § 803.04(2)(a), Wisconsin Health Care Insurance Plan is a proper defendant herein.

31. Defendant, Injured Patients and Families Compensation Fund ("the Fund") is a legal liability fund created by Wisconsin Statues for the purpose of paying the portion of claims in excess of limits expressed under statute or the maximum liability for which the insureds are insured, whichever limit is greater.

32. All of the Defendants are sued in their individual and official capacities. At all times material hereto, all Defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors or employees of MC; within the scope of their employment as representatives of public entities and were deliberately indifferent to the Constitutional and Statutory rights of Collins.

## IV. FACTS

33. Collins was taken into custody on December 17, 2018, and housed in the MCJ, Pod 5B, cell 5. (*See* Waukesha County Sheriff's Department Supplemental Narratives for Incident W18090170, attached hereto as **Ex.A** and incorporated herein by reference as to all factual allegations, as well as named and unnamed parties)

34. Over the course of the next 24 hours, Collins repeatedly suffered from a worsening medical condition that required at least one transfer to CJF's medical clinic.

35. On December 18, 2018, in the early morning hours and after repeated emergency calls from Collins' cell over the course of the night, a medical emergency was finally called in Collins' cell around 6:30 am that day.

12

36. The individual medical defendants, as identified in the preceding paragraphs, and in accord with the facts as detailed in **Ex.A** attached hereto and incorporated herein by reference, failed to timely and/or adequately respond to Collins' medical emergency on December 17, 2018, and over the course of the evening and early morning hours on December 18, 2018.

37. During the course of his medical emergency on December 17, 2018, and while in his cell at 6:30 am suffering from a medical emergency, Defendants and Armor Correctional Health Care Staff, Alomepe, Karaszewski, Dr. Brody and Gramza, responded to Collins' cell where he could not get of bed and was suffering from seizures. Each one separately failed to recognize the severity of Collins' medical emergency, failed to provide adequate medical care and failed to timely have Collins' transported to a hospital facility where he could receive the necessary care to address his medical emergency and/or save his life. Each and every one of these individually named defendants were on notice that Collins' was suffering from a medical emergency from their first encounter with him until he was transported out of CJF via ambulance to Froedtert Hospital. Despite their knowledge of Collins' medical emergency, none of these individually named defendants provided adequate medical care and none did anything whatsoever to ensure Collins was timely transported for emergency medical care.

38. Each defendant enumerated in paragraph 37, supra, knew Collins required immediate medical attention upon their first encounter with him, knew he required wheel chair assistance to CJF's medical clinic, knew he needed diagnostic testing and treatment that exceeded the capabilities of the medical facilities at CJF, but nevertheless failed to contact and/or communicate with ambulance personnel the dire necessity of Collins' immediate transport to Froedtert for advance care and necessary life saving measures.

39. The individual correctional staff defendants, as identified in the preceding paragraphs, and in accord with the facts as detailed in **Ex.A** attached hereto and incorporated herein

by reference, failed to timely respond to Collins' medical emergency on December 17, 2018, and/or over the course of the evening and early morning hours on December 18, 2018.

40.     While in his cell at 6:30 am suffering from a medical emergency, Correctional Staff Defendant Andrykowski responded to Collins' cell where he could not get of bed and was suffering from seizures.  Andrykowski provided wheel chair assistance for Collins transfer to CJF's medical clinic.  Despite observing Collins dire medical condition while in the cell and during the transport to CJF's medical clinic, Andrykowski failed to call a medical emergency that would trigger an ambulance response and failed to take any further action to protect the health, safety and welfare of Collins after depositing him at CJF's medical clinic.   Andrykowski just walked away from a clearly distressed man and took no further action whatsoever to ensure Collins received the emergency medical attention required under the circumstances.

41.     While in his cell at 6:30 am suffering from a medical emergency, Correctional Staff Lt. Artus responded to Collins' cell where he could not get of bed and was suffering from seizures. Artus observed Collins necessity for wheel chair assistance so Collins could be transfered to CJF's medical clinic.   Despite observing Collins dire medical condition while in the cell and during the transport to CJF's medical clinic, Artus failed to call a medical emergency that would trigger an ambulance response and failed to take any further action to protect the health, safety and welfare of Collins after depositing him at CJF's medical clinic.   Artus just walked away from a clearly distressed man and took no further action whatsoever to ensure Collins received the emergency medical attention required under the circumstances.

42.     Correctional Staff Defendant S. Johnson was assigned to the jail clinic on December 17 & 18, 2018, when Collins made multiple visits thereto as a result of his ongoing medical emergencies.  Johnson observed Collins repeatedly in a dire medical condition, but failed to call a medical emergency that would trigger an ambulance response and failed to take any further action to

protect the health, safety and welfare of Collins while watching him suffer at CJF's medical clinic. Johnson just sat in the medical clinic as a clearly distressed man further degraded in front of her eyes and took no action whatsoever to ensure Collins received the emergency medical attention required under the circumstances.

43. Correctional Staff Defendant Blomberg was assigned to the immediate transport of Collins on December 18, 2018, due to the medical emergency Collins continued to suffer from after her transport assignment. Blomberg observed Collins repeatedly in a dire medical condition, but failed to effectuate the immediate transportation of Collins to the emergency room, but instead stood by and watched as Collins suffered while waiting for an ambulance response and failed to take any further action to protect the health, safety and welfare of Collins while watching him suffer at CJF's medical clinic. Blomberg just sat and watched as a clearly distressed man further degraded in front of her eyes and took no action whatsoever to ensure Collins received the emergency medical transportation required under the circumstances.

44. Correctional Staff Defendant Spidell was assigned to the immediate transport of Collins on December 18, 2018, due to the medical emergency Collins continued to suffer from after her transport assignment. Spidell observed Collins repeatedly in a dire medical condition, but failed to effectuate the immediate transportation of Collins to the emergency room, but instead stood by and watched as Collins suffered while waiting for an ambulance response and failed to take any further action to protect the health, safety and welfare of Collins while watching him suffer at CJF's medical clinic. Spidell just sat and watched as a clearly distressed man further degraded in front of his eyes and took no action whatsoever to ensure Collins received the emergency medical transportation required under the circumstances.

### Milwaukee County's Pattern of Violating Constitutional Rights Of Inmates at The Justice Facility

*Recent Deaths at Justice Facility*

45.     Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 44 as if fully set forth herein.

46.     Since April of 2016, there have been at least 4 other tragic and wholly preventable deaths at CJF.

47.     On April 24, 2016, Terrill Thomas died at CJF while in the custody of the MCSO. Thomas had been arrested and booked into CJF on April 14, 2016.  Despite suffering from a severe mental illness and in the midst of a mental breakdown, Thomas was placed in a Maximum-Security Unit at CJF and never seen by any mental health professional.  After displaying bizarre and erratic behavior, JCF staff cut-off the water supply to Thomas' cell on April 18, 2016.  Six days later, Thomas' was found dead in his cell..  Thomas' death was subsequently ruled a homicide by the Milwaukee County Medical Examiner with the cause of death being dehydration.

48.     On August 28, 2016, Kristina Fiebrink died at CJF while in the custody of the MCSO.  Fiebrink had been arrested and booked into CJF on August 24, 2016, while she displayed clear signs of being under the influence of heroine, alcohol, and cocaine, which were noted by staff. Despite exhibiting signs and symptoms of acute heroin and alcohol intoxication, Fiebrink was never placed on preventative detoxification protocol, seen or assessed by a medical practitioner, provided withdrawal medication, or placed on a heightened observation level while at CJF.  On the night August 27, 2016, and into the early morning hours of August 28, 2016, Fiebrink screamed, begged, and pleaded for help in her cell, but correctional staff ever even bothered to check on her.  Fiebrink was subsequently found deceased on the morning of August 28, 2016, in her cell by correctional staff.

49.     On October 28, 2016, Michael Madden died at the Justice Facility while in the custody of the MCSO.  At the time of Madden's arrest, he was suffering from a heart condition which he had had been since birth, as well as a heroin addiction.  Despite these serious and grave

medical conditions, Madden received little to no health care while at CJF. On October 28, 2016, Madden suffered a seizure rendering him unconscious. The responding officers believed Madden was faking and failed to call a medical emergency. The officers then attempted to pick and hold Madden up, but dropped him on his head. Madden was subsequently pronounced dead the night of October 28, 2016, at CJF.

50.     That in the early morning hours of July 14, 2017, Shade Swazyer gave birth to a child in filthy cell alone and unattended despite repeated requests for assistance. At approximately 5:00 A.M. Swayzer delivered her child in extreme pain, covered in blood and her own feces, with no medical assistance of any sort. Swayzer's placenta had also exited her body. Swayzer wrapped her child in a blanket with her faced exposed and wrapped her placenta in a different sheet. Swayzer and child remained in the cell alone without medical assistance for over an hour. That almost an hour after the child was born, a correctional officer observed Swayzer laying on the bed in such a manner that she had never seen an inmate lay. The same officer also noticed, what she believed to be blood in the cell on Swayzer's mattress. That officer documented that Swayzer's cell was "filthy with several food trays throughout the cell and all of the blankets bunched up by Collins." Despite her observations and despite the fact that Swayzer was pregnant, the officer did not immediately call a medical emergency. The child died while in custody at the CJF.

*Consent Decree*

51.     The MCSO and MC entered into the Consent Decree with a class of plaintiffs (current and future inmates of CJF) in Milwaukee County Circuit Court Case No. 1996-CV-1835, which was approved by Milwaukee County Circuit Court Judge Thomas Donegan on June 19, 2001.

52.     The Consent Decree had two components: (1) Population control; and, (2) Medical care.

53.     In terms of medical care, the Consent Decree required that MC provide adequate, well-trained staff to provide health care to inmates and that thorough screening of inmates for physical and mental health conditions be conducted. It further set out requirements for physical examinations, dental care, women's health, sick call, mental health, chronic care, and emergencies.

54.     As part of the Consent Decree, the parties agreed that a medical monitor be appointed and approved by the Court to supervise MC's compliance with the Consent Decree's provisions while the court retained jurisdiction over the case until the MC was in full compliance with the terms of the Consent Decree.

55.     At all times material hereto, Shansky was the Court approved medical monitor tasked with monitoring MC's compliance with the Consent Decree.

56.     During his tenure, Shansky documented a series of systematic problems in CJF's healthcare system.

57.     Specifically, Shansky has found that, "health care staffing shortages contribute to delays in access to care and deterioration in quality of care for prisoners; reductions in the number of correctional officers contribute to dangerous lack of access to health care and inability to detect health crisis, and may have played a role in some of the recent deaths at the Jail; that continued turnover in health care leadership positions contribute to lack of oversite of quality of care; and that the electronic record has serious deficiencies and must be altered or replaced."

58.     That MC has exhibited a systematic deficiency in staffing for a period lasting over ten years.

59.     As a result of the lack of health care staff and deficient medical services at CJF, correctional officers often improperly attempt to substitute their untrained judgment for that of a medical professional.

60. The lack of staff at CJF creates severe problems for MC's ability to respond timely and appropriately to medical emergencies and needs, which is precisely what contributed to Collins's untimely, horrific, and preventable death.

61. That inmates with acute medical conditions have suffered for days, failed to receive appropriate medical care or referrals and have then died at CJF.

62. On several occasions, Shansky has found that the County was not performing medical emergency drills as required by the Consent Decree.

63. The Consent Decree is still in force and the above listed failures have never been corrected although the MC, Clarke and/or Armor have been aware of the problems for over a decade.

64. All Defendants were on notice of the unconstitutional conditions at CJF, and the problems identified by Dr. Shansky and each has failed to rectify these conditions.

65. The above acts and omissions of all Defendants, and each of them, constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety, and welfare of Collins and those similarly situated, resulting in the deprivation of their constitutional rights.

66. Federal and state law, as well as accepted corrections and medical practices at the time of the incident provided "fair warning" to Defendants that their conduct was improper, incompetent, illegal, and in violation of Collins' constitutional rights.

67. That MC and Armor's deliberate indifference to health care needs of inmates and complete failure to correct medical conditions reflected in the reports of Shansky caused a culture of indifference by which those employed by MC at CJF understood that health care was not a priority and failures in regard thereto would not have any repercussions.

68.     The acts and omissions of the Defendants, as set forth above, violated clearly established and well settled federal constitutional rights of the Plaintiffs, i.e., due process of law under the Fourth and Fourteenth Amendments, and cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

69.     The acts and omissions of the Defendants, as set forth above, violated clearly established and well settled Rights of the Plaintiffs under Articles I, Sections One and Six of the Wisconsin Constitution.

70.     As a direct and proximate result of the acts and omissions of the Defendants as set forth above, the Plaintiffs suffered the following injuries and damages:

    a.  Emotional distress, psychological distress, and mental anguish;
    b.  Physical pain and suffering;
    c.  Loss of companionship;
    d.  Loss of future enjoyment of life;
    e.  Fright and shock;
    f.  Denial of social pleasure and enjoyment;
    g.  Embarrassment, humiliation, and mortification,
    h.  Constitutional violations; and,
    i.  Death.

## V.     VIOLATIONS OF LAW

### COUNT I
### Section 1983 Claims
### All Defendants

71.     Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 70 as if fully set forth herein.

72.     As a result of the Defendants' refusal to provide Collins adequate medical attention he died at Froedtert Hospital.

73.     At all relevant times, Collins' medical unstable condition and medical emergencies should have been known to each of the above listed Defendants commencing on December 17,

2018, and continuing through December 18, 2018, which the Defendants deliberately chose to ignore.

74. Defendants, and each of them, knew that Collins suffered from serious medical conditions and needed immediate constitutionally adequate medical treatment, but deliberately ignored the same by failing to provide adequate medical care while Collins were housed at CJF.

75. Defendants, and each of them, knew Collins was in need of medical care and would suffer substantially if that medical care was not provided.

76. That the above-named Defendants, were deliberately indifferent to Collins' serious medical needs and intentionally deprived Collins of the necessary medical care and treatment, and acted with reckless disregard of his obvious serious medical conditions and needs, in violation of his rights, privileges, and immunities as guaranteed by the United States Constitution, the Fourth, Eighth, and Fourteenth Amendments, and Federal Statutes, including 42 U.S.C. § 1983.

77. That the conduct of the Defendants, shocks the conscious, was reckless, and demonstrates a deliberate indifference to the consequences of Defendants' refusal to provide Collins medical care while at CJF.

78. That the conduct of each Defendant, individually and/or as employees and/or agents of MC and Armor was committed while acting under color of state law, depriving Collins of his clearly established rights, privileges, and immunities, in violation of, *inter alia,* the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, and of 42 U.S.C. § 1983.

79. That Defendants deprived Collins of those rights, privileges and immunities secured by the United States Constitution and federal laws, while acting under the color of the laws of the State of Wisconsin, and the rules, regulations, customs and usages of the State of Wisconsin in violation of 42 U.S.C. § 1983.

80.     That the actions and omissions of all Defendants under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983, were all performed under the color of state law and were unreasonable and performed knowingly, intentionally, maliciously, and with deliberate indifference to Collins' safety, well-being, serious medical needs and lives; with wanton intent for Collins to suffer an unnecessary intentional infliction of pain and suffering by failing to properly provide any medical treatment, and failing to properly instruct, train, and supervise staff at CJF, including the individual Defendants having responsibility over the care, supervision, and general welfare of Collins ; and the failure to develop and implement appropriate policies and procedures and to ensure proper instruction, training, supervision, and medical care, as well as the implementation, adoption, and/or tolerance of policies and/or procedures which deprived Collins of medical attention for each of their serious medical needs as described above.  Said policies and/or procedures comprise a deliberate indifference to those serious medical needs of Collins, by reason of which Plaintiffs are entitled to compensatory and/or punitive damages.

81.     That the conduct of each Defendant, was committed pursuant to, and in execution and implementation of, the color of state law and officially sanctioned policies, practices, ordinances, regulations, and/or customs of MC and Armor; and each of the named Defendants exhibited a deliberate indifference in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution to Collins' serious medical needs, and in violation of 42 U.S.C. 1983, causing the constitutional deprivation of his individual rights to-wit:

  a. Deliberately failing to properly train CJF staff, including medical personnel providing medical care to inmates thereof, to properly assess and determine when a inmate is facing a medical emergency;
  b. Deliberately ignoring Collins' immediate needs for medical treatment;
  c. Deliberately failing to seek appropriate medical attention for Collins;
  d. Deliberately failing to conduct timely and meaningful security/rounds;
  e. Deliberately and willfully failing to notify appropriate doctors, nurses, and medical staff of Collins' condition;

22

    f.   Deliberately failing to hire, train, maintain, and implement competent staff at the CJF;

    g.   Deliberately failing to discipline, instruct, supervise, and/or control the conduct of staff at CJF, thereby encouraging the wrongful acts and omissions complained of herein;

    h.   Deliberately allowing a custom and/or practice at CJF of deliberately ignoring complaints of inmates or their need for medical attention;

    i.   Deliberately, willfully, and wantonly withholding required medical care to Collins when they had actual knowledge of his serious medical conditions requiring immediate attention;

    j.   Deliberately, willfully, and wantonly failing to ensure that CJF was properly staffed; and,

    k.   Deliberately, willfully, and wantonly failing to ensure the Consent Decree was complied with.

82. That as a direct and proximate result of the deliberate, willful, wanton, and reckless violation of Collins' Constitutional Rights, Plaintiffs suffered injuries and damages including, but not limited to the following:

    a.   Emotional distress, psychological distress, and mental anguish;
    b.   Physical pain and suffering;
    c.   Loss of companionship;
    d.   Loss of future enjoyment of life;
    e.   Fright and shock;
    f.   Denial of social pleasure and enjoyment;
    g.   Embarrassment, humiliation, and mortification;
    h.   Reasonable expenses of necessary medical care, treatment and services;
    i.   Constitutional violations;
    j.   Death;
    k.   Punitive damages for Defendants' willful conduct; and,
    l.   Any and all other damages, including, but not limited to attorney fees recoverable under 42 U.S.C. §§ 1983 and 1988.

### COUNT II
### Monell Liability
### Defendants Milwaukee County, Armor,

    *A.  Failure to Train and Adequately Supervise – Defendant Milwaukee County, Armor, Clarke and Horton*

83. Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 82 as if fully set forth herein.

84. That MC, MCSO, and Armor failed to adequately train officers, correctional employees, and medical staff at CJF at all times material to this Complaint on how to care for pregnant inmates, persons in their custody suffering from serious-acute-obvious medical conditions, and individuals in their custody in need of immediate medical attention, how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, how to conduct security rounds on special needs inmates, how to provide medical care and how to conduct intake screenings, amongst other failures.

85. That the failure of MC, MCSO, and Armor to adequately train and supervise its staff concerning several key issues such as how to care for: (a) seizures; (b) persons in their custody suffering from serious-acute-obvious medical conditions; and (c) individuals in their custody in need of immediate medical attention, and how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, how to conduct security rounds on special needs inmates, how to provide medical care and how to conduct intake screenings, demonstrated a deliberate indifference on the part of MC, MCSO, and Armor as to whether the failure to adequately train and supervise those responsible for the care and custody of those housed at CJF would result in the violation of the Constitutional, Civil, and Statutory Rights of individuals in their custody, such as Collins.

86. That the above-mentioned failure to adequately train and supervise correctional staff was a direct and proximate cause of the violations of the Constitutional, Civil, and Statutory Rights of Collins.

87. That the above-mentioned failure to adequately train and supervise correctional staff, and the acts and omissions of these Defendants was a direct and proximate cause of Collins' death, and the injuries, damages suffered by him.

24

*B. Defacto Policies, Practices, and/or Customs of Allowing Untrained Correctional Staff to make Decisions Concerning the Need for Appropriate Medical Treatment and the Housing of Inmates with Medical Needs –Defendant Milwaukee County and Armor.*

88.     Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 87 as if fully set forth herein.

89.     That the actions of MC, MCSO, and Armor allowing untrained correctional officers to make decisions concerning the need for appropriate medical care and decisions on where to house inmates with serious medical needs were done in accordance with MC, MCSO, and Armor policies, practices, and/or customs condoning the use of such procedures to deal with all inmates. That this policy, practice, and/or custom was officially adopted.

90.     That this official policy, practice, and/or custom of allowing untrained correctional officers to make decisions concerning the need for appropriate medical care and decisions on where to house inmates with serious medical needs violated Collins' Constitutional, Civil, and Statutory Rights and permitted, encouraged, tolerated, and/or ratified the actions of Defendants, all in a malicious, reckless disregard, and/or with deliberate indifference regarding the Constitutional, Civil, and Statutory Rights of Collins.

91.     That MC, MCSO, and Armor had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

92.     That each and every one of the above-mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Collins' Constitutional, Civil, and Statutory Rights, which lead to the injuries and damages suffered by him, as well as his eventual death.

93.     That the above-mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Collins, as well as his eventual death.

*C. Policies, Practices, and/or Customs of Ignoring the Requirements of the Consent Decree and Failing to Follow Recommendations of a Court Approved Medical Monitor Created a Culture in Which Milwaukee County Employees were Deliberately Indifferent to the Constitutional Rights of Inmates and Disregarded Proper Policy and Procedure – Defendant Milwaukee County*

94. Plaintiffs hereby reasserts and realleges each and every allegation contained in Paragraphs 1 through 93 as if fully set forth herein.

95. MC and MCSO failed to comply with the terms and provisions of the Consent Decree concerning healthcare; failed to follow the recommendations of Shansky; failed to work towards compliance with the standards of the National Commission on Correction Healthcare; allowed officers to substitute their judgment for that of health care staff; failed to conducts emergency drills; and have exhibited a systematic deficiency in staffing, amongst other failures, these actions have been ratified as official policy thereby creating a culture where healthcare staff and correctional staff are deliberately indifferent to the Constitutional Rights of persons in their custody, including Collins.

96. MC's and MCSO's policy of allowing the failures identified in the previous paragraphs have continued for years and are contrary to acceptable correctional practices.

97. MC's and MCSO's policy of allowing the failures identified in the previous paragraphs became a de facto policy of MC and the MCSO, creating a culture of indifference, which lead to de facto policy of officers and health care staff not being held accountable for their failure to provide medical care and/or call for medical care, further creating a de facto policy of MC, MCSO that officers and health care staff were not required to provide a constitutional level of health care and/or follow policies and procedures in regards to medical care.

98. That these above mentioned de facto policies of MC, MCSO constitute deliberate indifference against individuals in the custody of MC at CJF, and the de facto policies created an environment which would allow officers and health care staff to ignore the medical needs of inmates

and were factors that were significant and causal to the injuries and damages suffered by Collins, as well as his eventual death.

99.     That MC, MCSO had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

100.     That each and every one of the above-mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Collins' Constitutional, Civil, and Statutory Rights, which lead to the injuries and damages suffered by Collins , as well as his eventual death.

101.     That the above-mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Collins, as well as his eventual death.

> D. *Polices, Practices, and/or Customs of Not Conducting Security Rounds/Checks in A Timely and/or Meaningful Manner Which Created a Culture in Which Milwaukee County Employees were Deliberately Indifferent to the Constitutional Rights of Inmates and Disregarded Proper Policy and Procedure – Defendant Milwaukee County.*

102.     Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 101 as if fully set forth herein.

103.     That the actions of MCSO, MC of allowing correctional officers to skip security rounds/checks, not perform security rounds/checks, and or not perform meaningful security rounds/checks were done in accordance with MC's, MCSO's policies, practices, and/or customs condoning the use of said procedures.  That this policy, practice, and/or custom was officially adopted.

104.     That this official policy, practice, and/or custom of allowing correctional officers to skip security rounds/checks, not perform security rounds/checks, and or not perform meaningful security rounds/checks violated Collins' Constitutional, Civil, and Statutory Rights and permitted, encouraged, tolerated, and/or ratified the actions of correctional staff, all in a malicious, reckless

27

disregard, and/or with deliberate indifference to the Constitutional, Civil, and Statutory Rights of Collins.

105. That MC, MCSO had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

106. That each and every one of the above-mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Collins' Constitutional, Civil, and Statutory Rights, which lead to the injuries and damages suffered by Collins, as well as his eventual death.

107. That the above-mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Collins, as well as his eventual death.

## COUNT III
### Negligence
### Defendants Artus, S.Johnson, Andrykowski, Palmer, Spidell and Blomberg

108. Plaintiffs hereby reasserts and realleges each and every allegation contained in Paragraphs 1 through 107 as if fully set forth herein.

109. That Defendants undertook and owed Collins a duty to make reasonable efforts to care for each of them in a reasonably prudent manner, to exercise due care and caution and to follow the common law as it relates to persons in their custody who are unable to care for themselves or seek medical attention while in custody.

110. Notwithstanding the aforementioned duties, Defendants treated Collins in a manner that was negligent, careless, reckless, and without concern for her safety.

111. That Defendants, in the face of Collins' obvious need for medical attention and assistance, failed to obtain medical attention, failed to identify a medical emergency, and/or failed to act as required.

28

112. Defendants engaged in conduct that was so negligent, careless, and reckless that it demonstrated a substantial lack of concern by failing to appropriately implement policies and procedures concerning the training of correctional staff and/or medical staff regarding the processing and relaying of medical information and request for emergent medical treatment and by failing to act on requests for emergent medical treatment, including, but not limited to:

113. That as a direct and proximate result of the negligent, careless, and reckless disregard for Collins' safety and well-being, Plaintiffs suffered injuries and damages including, but not limited to the following:

     a. Emotional distress, psychological distress, and mental anguish;
     b. Physical pain and suffering;
     c. Loss of companionship;
     d. Loss of future enjoyment of life;
     e. Fright and shock;
     f. Denial of social pleasure and enjoyment;
     g. Embarrassment, humiliation, and mortification,
     h. Reasonable expenses of necessary medical care, treatment and services;
     i. Constitutional violations;
     j. Death;
     k. Punitive damages for Defendants' willful conduct; and,
     l. Any and all other damages.

## COUNT IV
### Wrongful Death (Wis. Stat. § 895.03)
### Defendants Artus, S.Johnson, Andrykowski, Palmer, Spidell and Blomberg

114. Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 113 as if fully set forth herein.

115. That Collins' death was caused by Defendants' wrongful acts, negligence, and/or improper conduct

116. That if Collins' death had not ensued, Collins would have been able to bring a claim against the above-named Defendants for violations of Title 42 of the United States Code, Sections 1983 and 1985 for violations of her rights under the Fourth, Eighth and Fourteenth Amendments to

the United States Constitution and her rights under the Wisconsin Constitution and Wisconsin Common law.

## VI.    CONDITIONS PRECEDENT

117.    All conditions precedent to this lawsuit have been performed or otherwise occurred.

## VII.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully demands judgment in favor of Plaintiffs against each of the Defendants, jointly and severally, awarding Plaintiffs:

    a.  Compensatory damages in an amount to be determined by the Jury;
    b.  Punitive damages in an amount to be determined by the Jury;
    c.  Actual damages, reasonable actual attorney fees, and exemplary damages in an amount to be determined by the Jury pursuant to Wis. Stat., §146.84(1);
    d.  Reasonable costs and expenses associated with this action including attorneys' fees pursuant to 42 U.S.C. 1988; and,
    e.  Any other further relief as this Honorable Court deems just and fair.

Milwaukee County is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the Defendants in this action because the Defendants were acting within the scope of their employment when they committed the above-mentioned unconstitutional and negligent actions.

Plaintiffs hereby reserve their right to amend their Complaint as additional information becomes known through discovery.

## VIII.    DEMAND FOR JURY TRIAL

The Plaintiffs demand trial by jury.

Dated at this 17th day of December, 2021.

Respectfully Submitted,

Gende Law Office, S.C.

By: s/ James J. Gende II
    James J. Gende II (SBN: 1030921)
    John VanDeHey (SBN: 1120744)
    GENDE LAW OFFICE, S.C.

N28W2300 Roundy Dr., Ste. 200
Pewaukee, WI 53072
P: (262) 970-8500
F: (262) 970-7100
jgende@jamesgendelaw.com
Attorneys for Plaintiffs