THE ESTATE OF BRIAN COLLINS
by David Lang Special Administrator, *et al.*,

                Plaintiffs,

v.                                         Case No. 21-cv-1438-pp

MILWAUKEE COUNTY, *et al.*,

                Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES'S MOTION TO DISMISS (DKT. NO. 55)**

On December 17, 2021, the plaintiffs filed a complaint alleging that the defendants violated Brian Collins' constitutional, civil and/or statutory rights, causing Collins to unnecessarily suffer damages, injuries and ultimately his death while incarcerated at the Milwaukee County Jail. Dkt. No. 1. The plaintiffs brought the following claims: <u>Count 1</u>—violation of the Fourth, Eighth and Fourteenth Amendments, under 42 U.S.C. §1983 against all defendants; <u>Count 2</u>—"<u>Monell</u> Liability," including (A) failure to train and adequately supervise against defendants Milwaukee County and Armor Correctional Health Services (Armor); (B) policies, practices and/or customs of allowing untrained correctional staff to make decisions concerning the need for appropriate medical treatment and the housing of inmates with medical needs against Milwaukee County and Armor; (C) polices, practices and/or customs of ignoring the requirements of the consent decree and failing to follow recommendations of a court-approved medical monitor which created a culture

in which Milwaukee County employees were deliberately indifferent to the constitutional rights of inmates and disregarded proper policy and procedure against Milwaukee County; and (D) policies, practices and/or customs of not conducting security rounds/checks in a timely and/or meaningful manner which created a culture in which Milwaukee County employees were deliberately indifferent to the constitutional rights of inmates and disregarded proper policy and procedure against Milwaukee County; Count 3—state law negligence claim against Artus, Johnson, Andrykowski, Palmer, Spidell and Blomberg; and Count 4—wrongful death in violation of Wis. Stat. §895.03 against Artus, Johnson, Andrykowski, Palmer, Spidell and Blomberg. Dkt. No. 1 at ¶¶71-116.

Armor has filed a motion to dismiss the complaint against it under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 55. The court will grant the motion in part and deny it in part.

## I.  Allegations in the Complaint

The plaintiffs are the Estate of Brian Collins, by Special Administrator David Lang, and Collins's minor children, Breon, Ajanae, Cahron and Brandon Gordon-Collins. Dkt. No. 1 at ¶¶9-14. The defendants are: Officer Sherita Johnson; Officer Derrick Spidell; Officer Tabatha Bloomberg; Officer Jeff Andrykowski; Officer Russell Palmer; Officer Steven Artus; Nurse Practitioner Jacqueline Alomepe; Registered Nurse Supervisor Lynda Karaszewski; Registered Nurse Liana Gramza; Registered Nurse Supervisor Candace Dzieozic; Dr. Jonathon Brody; Milwaukee County; Wisconsin County Mutual

2

Insurance Corporation; Armor Correctional Health Services, Inc.; Evanston Insurance Company; and Injured Patients and Families Compensation Fund. Id. at ¶¶15-30.

The plaintiffs allege that on December 17, 2018, Collins was taken into custody and confined in the Milwaukee County Jail and Criminal Justice Facility (CJF). Id. at ¶33. The plaintiffs state that, over the next twenty-four hours, Collins suffered from a worsening medical condition that required at least one transfer to the CJF's medical facility. Id. at ¶34. On December 18, 2018 at about 6:30 a.m., "after repeated emergency calls from Collins' cell over the course of the night, a medical emergency was finally called in Collins' cell[.]" Id. at ¶35.

The plaintiffs allege that the individual medical defendants failed to timely and/or adequately respond to Collins's medical emergency on December 17 and 18, 2018. Id. at ¶36. They assert that during Collins's medical emergency, Alomepe, Karaszewski, Brody and Gramza responded to Collins's cell where he could not get out of bed and suffered from seizures and that those defendants failed to provide adequate medical care and failed to timely have Collins transported to a hospital facility. Id. at ¶37. The plaintiffs allege that those defendants knew Collins required immediate medical attention upon their first encounter with him, but failed to take the necessary life saving measures. Id. at ¶38.

The plaintiffs also allege that the individual correctional staff defendants failed to timely respond the Collins's medical emergency. Id. at ¶39. They state

3

that Andrykowski responded to Collins's cell at 6:30 a.m. on December 18, 2018 and provided wheelchair assistance for his transfer to the CJF's medical clinic. Id. at ¶40. Artus allegedly also responded to Collins's cell at 6:30 a.m. on December 18, 2018. Id. at ¶41. Andrykowski and Artus allegedly observed Collins's dire medical condition yet failed to call a medical emergency and, instead, deposited Collins at the CJF's medical facility. Id. at ¶¶40-41. Johnson, who allegedly was assigned to the CJF medical clinic on December 17-18, 2018, allegedly repeatedly observed Collins in a dire condition but failed to call a medical emergency that would trigger an ambulance response and failed to take any further action to protect Collins's health, safety and welfare while watching him suffer at the CJF's medical clinic. Id. at ¶42. The plaintiffs allege that Blomberg and Spidell, who were assigned to the "immediate transport" of Collins on December 18, 2018, repeatedly observed Collins in a dire medical condition, but failed to have him immediately sent to the emergency room. Id. at ¶¶43-44. They allegedly stood by and watched as Collins suffered at the CJF's medical clinic while waiting for an ambulance, and failed to take further action to protect his health, safety and welfare. Id.

The plaintiffs allege that Milwaukee County has a pattern of violating incarcerated persons' constitutional rights at the CJF and that since April 2016, there have been at least four other "tragic and preventable deaths" at the CJF. Id. at ¶46. First, the complaint describes the April 24, 2016, death of Terrill Thomas, who allegedly was booked into the CJF on April 14, 2016 while suffering from a severe mental illness and in the midst of a mental breakdown,

4

but never was seen by a mental health professional and who was found dead in his cell six days after CJF staff cut off the water supply to his cell. Id. at ¶47. Second, the complaint describes the August 28, 2016, death of Kristina Fiebrink at the CJF; Fiebrink allegedly was booked into the CJF on August 24, 2016, while she displayed signs of being under the influence of heroine, alcohol and cocaine. Id. at ¶48. Third, the complaint describes the October 28, 2016 death of Michael Madden, who allegedly suffered a seizure rendering him unconscious; responding officers allegedly thought he was faking and failed to call a medical emergency. Id. at ¶49. Fourth, the complaint alleges that Shade Swazyer gave birth to a child in a filthy cell alone and unattended on July 14, 2017, and that the child died while in custody at the CJF. Id. at ¶50.

The plaintiffs allege that the Milwaukee County Sheriff's Office and Milwaukee County entered into a consent decree with a class of plaintiffs (persons currently and formerly incarcerated at the CJF) in Milwaukee County Circuit Court Case No. 1996CV1835, which Milwaukee County Circuit Court Judge Thomas Donegan approved on June 19, 2001. Id. at ¶51. As it relates medical care, the consent decree required that Milwaukee County provide adequate, well-trained staff to provide health care to incarcerated persons and conduct thorough screenings of incarcerated persons for physical and mental health conditions. Id. at ¶53. As part of the consent decree, the parties agreed that a medical monitor be appointed to supervise Milwaukee County's compliance with the consent decree's provisions. Id. at ¶54. At all relevant times, Dr. Shansky was the court-appointed medical monitor tasked with

5

monitoring Milwaukee County's compliance with the consent decree. Id. at ¶55. During his tenure, Shansky documented a series of systematic problems in CJF's healthcare system. Id. at ¶56. Specifically, Shansky has found that,

> health care staffing shortages contribute to delays in access to health and access to care and deterioration in quality of care for prisoners; reductions in the number of correctional officers contribute to dangerous lack of access to healthcare and inability to detect health crisis, and may have played a role in some of the recent deaths at the Jail; that continued turnover in health care leadership positions contribute to lack of oversight of quality of care; and that the electronic record has serious deficiencies and must be altered or replaced period.

Id. at ¶57.

The complaint alleges that because of the lack of healthcare staff and deficient medical services at the CJF, correctional officers often improperly attempt to substitute their untrained judgment for that of a medical professional. Id. at ¶59. The complaint also alleges that the lack of staff at the CJF creates severe problems for Milwaukee County's ability to respond timely and appropriately to medical emergencies and needs, which contributed to Collins's "untimely, horrific and preventable death." Id. at ¶ 60. The plaintiffs assert that the consent decree still is in force and that the above-described failures never have been corrected although "Milwaukee County, Clarke[1] and/or Armor" have been aware of the problems for over a decade. Id. at ¶63. The plaintiffs state that all defendants were on notice of the unconstitutional conditions at CJF and the problems identified by Shansky, and that each has

---

[1] Former Milwaukee County Sheriff David Clarke is not a defendant in this case.

failed to rectify these conditions. Id. at ¶64. The plaintiffs claim that Milwaukee County and Armor's deliberate indifference to the health care needs of incarcerated persons and their failure to correct medical conditions reflected in the reports of Shansky caused a culture of indifference by which those employed by Milwaukee County, and that the CJF understood that healthcare was not a priority and that failures in regard to healthcare would not have any repercussions. Id. at ¶67.

## II. Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Hosea v. Slaughter, 669 F. App'x 791, 792 (2016); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). "[A] judge reviewing a motion to dismiss under Rule 12(b)(6) cannot engage in fact-finding." In re Consol. Indus., 360 F.3d 712, 717 (7th Cir. 2004) (citing Int'l Marketing, Ltd. v. Archer-Daniels-Midland Co., 192 F.3d 724, 730 (7th Cir. 1999)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Alarm Detection Systems, Inc. v. Vill. of Schaumburg, 930 F.3d 812, 821 (7th Cir. 2019) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. Taha v. Int'l Bhd. of Teamsters, Local 781, 947 F.3d 464, 469 (7th Cir. 2020) (citing Yeftich v. Navistar, Inc., 722 F.3d 911, 915 (7th Cir. 2013)). "[L]egal conclusions and conclusory allegations merely reciting the elements of a claim," however, "are not entitled to this presumption of truth." McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal, 556 U.S. at 678).

### III. Armor's Motion to Dismiss

The complaint alleges that Armor, a Florida corporation, operates in the State of Wisconsin for purposes of providing medical care at correctional facilities and that, at all relevant times, Armor provided health care services to incarcerated persons at the CJF (including Collins) under color of state law. Dkt. No. 1 at ¶28. The complaint labels the claims the plaintiffs bring against Armor as follows: "Count 1, Section 1983 Claims, All Defendants" and "Count 2, Monell Liability, Defendants Milwaukee County, Armor." Dkt. No. 1 at 20, 23.

Armor contends that the complaint fails to state a claim against Armor for which relief can be granted. Dkt. No. 55-1 at 2. According to Armor, it cannot be liable under a theory of *respondeat superior* and the complaint against it does not describe conduct constituting a "policy" for Monell purposes. Id. at 4.

The plaintiffs oppose the motion. Dkt. No. 56. They contend that Armor can be held liable under Monell liability and that the allegations in the complaint "give rise to an inference that Defendant Armor had a well settled policy or custom in which its employees were deliberately indifferent to the emergent health care of inmates over a significant period of time that resulted in a multitude of in-custody deaths of their patients." Dkt. No. 56 at 3, 4-10. The plaintiffs also contend that Armor, as a private corporation, can be held liable for its civil rights violations under the theory of *respondeat superior*. Id. at 10-12. Armor did not file a reply brief.

Armor correctly states that it cannot be liable under a theory of *respondeat superior*—a private corporation is not liable under 42 U.S.C. §1983 simply because it employs the defendants. Shields v. Ill. Dep't of Corr., 746 F.3d 782, 796 (7th Cir. 2014). The plaintiffs cite Shields in support of their contention that as a private corporation, Armor can be held liable for civil rights violations under the theory of *respondeat superior*. Dkt. No. 56 at 10. But while the Seventh Circuit questioned in Shields whether private corporations, unlike their public counterparts, might be subject to *respondeat superior* liability, it did not overrule existing circuit case law that extends Monell from municipalities to private corporations. Shields, 746 F.3d at 790-92, 796 (citing Iskander v. Vill. of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982) ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees . . . , a private corporation is not vicariously liable under s. 1983 for its employees'

deprivations of others' civil rights.")). The Seventh Circuit recently reiterated that it had not addressed the question raised in Shields—that is, whether it should overrule existing precedent that private corporations are not liable in §1983 claims under the theory of *respondeat superior*. See Reck v. Wexford Health Sources, Inc., 27 F.4th 473, 488 (7th Cir. 2022). The court will grant Armor's motion to dismiss to the extent that the plaintiffs seek to impose liability on Armor for its §1983 claims under the theory of *respondeat superior*.

Under §1983, a private corporation may be liable under Monell v. Dep't of Soc. Servs., 436 U.S. 58 (1978) if a "municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)[.]" Thomas v. Martija, 991 F.3d 763, 773 (7th Cir. 2021) (quoting Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017)). To prove that the corporation itself inflicted the harm, the plaintiff may show that (1) the alleged unconstitutional conduct implements or executes an official policy adopted by the entity's officers, (2) the unconstitutional action was performed pursuant to a custom or (3) an actor with final decision-making authority within the entity adopted the relevant policy or custom. Id. at 773-74 (citing Monell, 436 U.S. at 690-91, 694); see also Shields, 746 F.3d at 796 (to recover against private corporation under current precedent, incarcerated person must offer evidence that his injury was caused by a policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy).

Armor contends that the complaint against it does not describe conduct constituting a "policy" for Monell purposes. Dkt. No. 55-1 at 4. Armor argues

that no "express policy, statement, or ordinance or regulation" is cited in the complaint, that the complaint does not allege that Armor has "final policymaking authority" in any area at issue and that the complaint fails to allege that Armor engaged in an unconstitutional practice that was "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." Id.

According to the plaintiffs, the complaint "cite[s] to an undisputed line of similar instances over a short period of time involving Armor, its employees lack of training and/or insufficient staffing that resulted in a multitude of in-custody deaths from failure to timely respond to an inmate's serious medical condition." Dkt. No. 56 at 5. The plaintiffs also state that they have pled sufficient facts to establish a well settled policy by Armor "to chronically understaff its nursing positions and failure to train the staff it did provide to timely respond to medical emergencies with a series of tragic consequences." Id. The plaintiffs state that "Armor suffered from systemic and gross deficiencies in staffing and procedures[,]" and that "Armor has exhibited a pattern of inadequate health care provision which culminated with a string of in-custody deaths on Armor's watch, which has been well documented by a plethora of related cases in this District where Armor is accused of being deliberately indifferent to an inmate's health while serving patients at the [CJF]." Id. at 6.

The plaintiffs have adequately alleged that Armor (and Milwaukee County) had a custom or practice of failing to train and adequately supervise

its employees, and that Armor (and Milwaukee County) had a policy, practice and/or custom of allowing untrained correctional staff to make decisions concerning the need for appropriate medical treatment and the housing of incarcerated persons with medical needs. The plaintiffs have alleged four other instances of incarcerated persons suffering or dying at the CJF because of Armor's (and Milwaukee County's) actions or failure to take any action. Dkt. No. 1 at ¶¶45-50. The plaintiffs also have alleged that Armor decision-makers knew of Armor's understaffing and nurse training issues. Id. at ¶¶51-65. The plaintiffs have sufficiently alleged facts to support the Monell claims pled in the complaint against Armor. See Thomas v. Cook Cty. Sheriff's Dep't, 604 F.3d 283, 303-04 (7th Cir. 2010).

**IV.   Conclusion**

The court **GRANTS IN PART AND DENIES IN PART** defendant Armor Correctional Health Services, Inc.'s motion to dismiss. Dkt. No. 55. The court **GRANTS** Armor's motion to dismiss claims that the plaintiffs brought against Armor under a theory of *respondeat superior* liability. The court **DENIES** Armor's motion to dismiss the plaintiffs' claims brought under Monell. Dkt. No. 55.

Dated in Milwaukee, Wisconsin this 7th day of November, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**