THE ESTATE OF BRIAN COLLINS
*by David Lang Special Administrator, et al.*,

                            Plaintiffs,

   v.                                        Case No. 21-cv-1438-pp

MILWAUKEE COUNTY, *et al.*,

                            Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MILWAUKEE COUNTY'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 162), GRANTING PLAINTIFFS' FIRST MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION IN SUR-REPLY (DKT. NO. 175), GRANTING PLAINTIFFS' SECOND MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL DECLARATION (DKT. NO. 179), SETTING DEADLINE FOR PLAINTIFFS TO DEPOSE MILWAUKEE COUNTY AND SETTING DEADLINE FOR PARTIES TO FILE MOTIONS FOR SUMMARY JUDGMENT**

      Defendant Milwaukee County has filed a motion under Federal Rule of Civil Procedure 26(c)(1) seeking a protective order prohibiting the Rule 30(b)(6) deposition noticed by the plaintiffs from proceeding unless the plaintiffs revise Topics 2, 3, 5 and 6 such that they are stated with the reasonable particularity required by the rule. Dkt. No. 164 at 1-2, 10, 19. The plaintiffs respond that Milwaukee County has not shown good cause to support its motion for a protective order because proposed Topics 2, 3, 5 and 6 comply with the applicable discovery rules. Dkt. No. 169 at 2. The plaintiffs also state they clarified and narrowed the scope of Topics 2, 3, 5 and 6, but that the County has been unwilling to compromise on any issue. Id. TheCounty filed a reply

1

reiterating that the plaintiffs' notice of deposition does not meet the reasonable particularity requirement of Rule 30(b)(6) with respect to Topics 2, 3, 5 and 6. Dkt. No. 172 at 1. The County asserts that the plaintiffs' failure to satisfy the reasonable particularity requirement is magnified by their inability to articulate a defined, legally sufficient §1983 claim against the County under <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658 (1978). <u>Id.</u>

I.  **Background**

This case arises from the December 18, 2018 death of Brian Collins at Froedtert Hospital following his transfer there from the Milwaukee County Jail. Dkt. Nos. 1, 2. The plaintiffs allege that on December 17, 2018, Collins was confined in the jail and that over the next twenty-four hours, he allegedly suffered from a worsening medical condition that required at least one transfer to the jail's medical facility. Dkt. No. 1 at ¶¶33-34. On December 18, 2018 at about 6:30 a.m., "after repeated emergency calls from Collins' cell over the course of the night, a medical emergency was finally called in Collins' cell[.]" <u>Id.</u> at ¶35.

The plaintiffs allege that the individual medical defendants failed to timely and/or adequately respond to Collins's medical emergency on December 17 and 18, 2018. <u>Id.</u> at ¶¶36-38. They also allege that the individual correctional staff defendants failed to timely respond to Collins's medical emergency. <u>Id.</u> at ¶¶39-44. The plaintiffs allege that Milwaukee County has a pattern of violating incarcerated persons' constitutional rights at the jail and

that since April 2016, there have been at least four other "tragic and preventable deaths" at the jail. Id. at ¶¶46-50.

The Milwaukee County Sheriff's Office and Milwaukee County allegedly entered into a consent decree with a class of plaintiffs (persons currently and formerly incarcerated at the jail) in Milwaukee County Circuit Court Case No. 1996CV1835, which Milwaukee County Circuit Court Judge Thomas Donegan approved on June 19, 2001. Id. at ¶51. As it relates medical care, the consent decree required that Milwaukee County provide adequate, well-trained staff to provide health care to incarcerated persons and conduct thorough screenings of incarcerated persons for physical and mental health conditions. Id. at ¶53. Dr. Shansky, the court-appointed medical monitor tasked with monitoring the County's compliance with the consent decree, documented a series of systematic problems in the jail's healthcare system. Id. at ¶¶55-56. Specifically, Shansky has found that,

> health care staffing shortages contribute to delays in access to health and access to care and deterioration in quality of care for prisoners; reductions in the number of correctional officers contribute to dangerous lack of access to healthcare and inability to detect health crisis, and may have played a role in some of the recent deaths at the Jail; that continued turnover in health care leadership positions contribute to lack of oversight of quality of care; and that the electronic record has serious deficiencies and must be altered or replaced period.

Id. at ¶57.

The complaint alleges that because of the lack of healthcare staff and deficient medical services at the jail, correctional officers often improperly attempt to substitute their untrained judgment for that of a medical

3

professional. Id. at ¶59. The lack of staff at the jail allegedly creates severe problems for Milwaukee County's ability to respond timely and appropriately to medical emergencies and needs, which contributed to Collins's "untimely, horrific and preventable death." Id. at ¶60. The plaintiffs assert that the consent decree still is in force and that the above-described failures have not been corrected. Id. at ¶63. All defendants allegedly were on notice of the unconstitutional conditions at the jail and the problems identified by Shansky, and they failed to rectify these conditions. Id. at ¶64.

The complaint advances the following claims:

Count 1—violation of the Fourth, Eighth and Fourteenth Amendments, under 42 U.S.C. §1983 against all defendants;

Count 2—"Monell Liability," including (A) failure to train and adequately supervise against defendants Milwaukee County and Armor Correctional Health Services (Armor); (B) policies, practices and/or customs of allowing untrained correctional staff to make decisions concerning the need for appropriate medical treatment and the housing of incarcerated individuals with medical needs against Milwaukee County and Armor; (C) polices, practices and/or customs of ignoring the requirements of the consent decree and failing to follow recommendations of a court-approved medical monitor, which created a culture in which Milwaukee County employees were deliberately indifferent to the constitutional rights of incarcerated individuals and disregarded proper policy and procedure against Milwaukee County; and (D) policies, practices and/or customs of not conducting security rounds/checks in a timely and/or

4

meaningful manner, which created a culture in which Milwaukee County employees were deliberately indifferent to the constitutional rights of incarcerated individuals and disregarded proper policy and procedure against Milwaukee County;

Count 3—state law negligence claim against defendants Artus, Johnson, Andrykowski, Palmer, Spidell and Blomberg; and

Count 4—wrongful death in violation of Wis. Stat. §895.03 against defendants Artus, Johnson, Andrykowski, Palmer, Spidell and Blomberg. Dkt. No. 1 at ¶¶71-116.

On November 7, 2022, the court granted in part and denied in part defendant Armor's motion to dismiss. Dkt. No. 68. The court granted Armor's motion to the extent that the plaintiffs sought to impose liability on Armor for §1983 claims under the theory of *respondeat superior*. Dkt. No. 68 at 10. The court denied Armor's motion to dismiss the plaintiffs' claims brought under Monell. Id. at 12. The court reasoned:

> The plaintiffs have adequately alleged that Armor (and Milwaukee County) had a custom or practice of failing to train and adequately supervise its employees, and that Armor (and Milwaukee County) had a policy, practice and/or custom of allowing untrained correctional staff to make decisions concerning the need for appropriate medical treatment and the housing of incarcerated persons with medical needs. The plaintiffs have alleged four other instances of incarcerated persons suffering or dying at the [jail] because of Armor's (and Milwaukee County's) actions or failure to take any action. Dkt. No. 1 at ¶¶45-50. The plaintiffs also have alleged that Armor decision-makers knew of Armor's understaffing and nurse training issues. Id. at ¶¶51-65. The plaintiffs have sufficiently alleged facts to support the Monell claims pled in the complaint against Armor. See Thomas v. Cook Cty. Sheriff's Dep't, 604 F.3d 293, 303-04 (7th Cir. 2010).

Dkt. No. 68 at 11-12.

## II. Motion for Protective Order, Dkt. No. 162

### A. Applicable Law

A party from whom discovery is sought may move for a protective order. Fed. R. Civ. P. 26(c)(1). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Id. For good cause, the court may issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Id.

Rule 30(b)(6) provides:

> (6) *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

The scope of Rule 30(b)(6) is limited by Rule 26, which permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Rule 26 requires that the court must limit the frequency or extent of discovery if it determines that:

6

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

### B.     Plaintiffs' Rule 30(b)(6) Notice of Deposition

On May 7, 2024, the plaintiffs served a Notice of Deposition under Rules 30(b)(6) and 45 for a date and time agreed to by Armor and Milwaukee County's attorney. Dkt. No. 169 at 7-8; Dkt. No. 165-2. In the notice, the plaintiffs proposed the following seven topics:

(1) The hiring and firing of Armor Correctional Health Services, Inc. ("Armor");

(2) When the County first became aware Armor was not fulfilling its contractual obligations and what, if anything, the county did to enforce its contractual terms with Armor;

(3) What, if anything, the County did to oversee whether Armor was fulfilling the terms and conditions imposed by the Christensen Consent Decree relative to medical services provided to the inmates at the County's jail;

(4) What issues, if any, did the County become aware of, and when, relative to Armor's falsification of medical records;

(5) What issues, if any, did the County become aware of, and when, relative to Armor's failure to provide adequate medical care to inmates at the County jail;

(6) What, if anything, the County did in relation to its contract with Armor upon learning about the deaths of multiple inmates at

the County jail during Armor's tenure as the health care provider; and

(7) Why the County terminated its contract with Armor and when that decision was made.

Dkt. No. 169 at 8.

On May 24, 2024, counsel for Milwaukee County and Armor emailed the plaintiffs' counsel expressing concern over Topics 1, 2, 5 and 6. Id.; Dkt. No. 170-10. Four days later, the plaintiffs' counsel responded by clarifying Topic 1 and explaining why they believe that Topics, 2, 5 and 6 did not need to be narrowed. Dkt. No. 169 at 8; Dkt. No. 170-11. On May 29, 2024, the plaintiffs served an Amended Notice with an amended agreed-upon deposition date of June 27, 2024. Dkt. No. 169 at 8; Dkt. No. 170-12. On June 10, 2024, counsel for Armor and the County accepted the clarification for Topic 1, but asserted that there were issues with Topics 2, 3, 5 and 6, such that they remained overly broad. Dkt. No. 169 at 8; Dkt. No. 170-13. Counsel for the County asked the plaintiffs' counsel to clarify or narrow proposed Topics, 2, 3, 5, and 6. Id. That same day, the plaintiffs' counsel responded by narrowing the scope of the topics as follows:

> Topic 2: Only contractual issues related to lack of care and failure to maintain proper staffing.
>
> Topic 3: Only issues related to inadequate medical care and staffing deficiencies in violation of the Consent Decree.
>
> Topics 5 and 6: Only issues related to inadequate medical care where in-custody deaths occurred.

8

Dkt. No. 169 at 8-9; Dkt. No. 170-14. The plaintiffs state that instead of trying to compromise, the County and Armor filed this motion for protective order on June 19, 2024, eight days before the scheduled deposition. Dkt. No. 169 at 8.

After the parties had fully briefed Milwaukee County's motion for a protective order, the plaintiffs filed a motion for leave to file a supplemental declaration in sur-reply. Dkt. No. 175. The motion references an attached declaration and emails regarding early communications by the plaintiffs' counsel in which counsel sought cooperation in setting depositions for Milwaukee County personnel. Id. at 2. The defendants do not oppose the motion. Dkt. No. 177. The court will grant the plaintiffs' motion for leave to file the supplemental declaration.

The plaintiffs also have filed a motion for leave to file a second supplemental declaration. Dkt. No. 179. In this motion, the plaintiffs submit a declaration and emails to show that Milwaukee County refused to propose any Rule 30(b)(6) designated witness and/or any scope of inquiry in response to the plaintiffs' continued efforts to undertake discovery and despite twice telling counsel it would do so. Id. at 1-2. In the last email, which is dated September 3, 2024, counsel for the County says that he will submit a proposal to counsel for the plaintiffs later that week. Dkt. No. 179-4 at 1.

Milwaukee County does not object to the court's consideration of the proposed second supplemental declaration. Dkt. No. 181. Counsel for the County offers two final exhibits for the court's consideration: (1) an email exchange from the afternoon of September 6, 2024, in which counsel for the

9

County explained to the plaintiffs' counsel that he still was in discussions with the County about a possible compromise proposal but that he would follow up again as soon as he had authorization to convey a proposal; the plaintiffs' counsel responded by stating he would proceed to file his proposed supplemental declaration anyway; and (2) an email from the plaintiffs' counsel on September 9, 2024 (which counsel for the County received while he was in an all-day deposition in another matter), in which the plaintiffs' counsel stated that he was offering a "last chance" and intended to file the proposed supplemental declaration twelve minutes later. Id. at 1-2.

It is not clear whether Milwaukee County ever obtained authorization to convey a proposed compromise proposal to the plaintiffs, as stated in the email dated September 6, 2024. Based on the parties' positions in their lengthy submissions on the County's motion for protective order, it does not appear that any proposed compromise proposal would have resulted in resolution of the discovery dispute. The court finds that neither party failed to confer in good faith, and it will address the parties' arguments regarding Topics 2, 3, 5 and 6.

    C.    <u>Discussion</u>

        1.    *Topic 2: When the County first became aware Armor was not fulfilling its contractual obligations and what, if anything the County did to enforce its contractual terms with Armor*

Milwaukee County contends that the plaintiffs' proposed Topic 2 violates Rule 30(b)(6) because it is vague and broadly phrased such that it would impose an undue burden on any county designee to give deposition testimony on the subject. Dkt. No. 164 at 11. According to the County, the contract in

place at the time of Collins's death in December 2018 was twenty-seven pages long and covered a broad range of substantive components of the jail's medical program. Id. at 12. The County states that the scope of the care that Armor was contracted to provide over a six-year period, as well as any performance or enforcement issues that may have arisen between Armor and the County under the contract, are vastly broader than any issues the plaintiffs may allege with respect to the care provided to Collins in the jail. Id.

The plaintiffs respond that Armor's repeated violations of the contract while multiple incarcerated individuals died on Armor's watch likely put Milwauee County on notice that Armor was violating incarcerated individuals' constitutional rights. Dkt. No. 169 at 15. The plaintiffs contend that whether Armor fulfilled its contractual obligations and what the County did to enforce those conditions are relevant to the plaintiffs' Monell claims. Id. The plaintiffs assert that they seek evidence to support their Monell claims against Armor and the County where the County's custom or practice—that is, repeated failures by Armor to provide constitutionally adequate medical care to incarcerated individuals—even if not officially authorized, became widespread and well-settled under the County's watch. Id. at 16. The plaintiffs state that with Armor as the County's health care provider, the County's policymakers must have been aware of the risk created by Armor's custom or practice of egregious understaffing and chronically bad care of incarcerated individuals resulting in multiple in-custody deaths at the jail. Id. They state that if the County was aware of these dangerous practices (which plaintiffs seek to prove

11

through their deposition) and failed to create a policy to remedy the practices, that failure is actionable. Id.

The plaintiffs also contend that Topic 2 is not overly broad or vague and that it meets the reasonable particularity requirement. Id. at 19. They state that they agreed to narrow the scope of the inquiry and that Milwaukee County can identify the outer limits of the inquiry. Id. The plaintiffs point out that counsel's June 10, 2024 email narrowed the scope of Topic 2 to "only contractual issues related to lack of care and failure to maintain proper staffing." Id. at 8-9, 20. The plaintiffs state that they "clearly only seek information about (1) instances where the County was aware inmates received a lack of care from Armor (and how that violated or related to the contract) and (2) instances where the County was aware Armor was short-staffed in the Milwaukee County Jail (and how that violated or related to the contract." Id. at 20. The plaintiffs contend that the County has a duty to prepare a designee to testify about Armor's contractual obligations (relating to lack of care and inadequate staffing) and what the County did to enforce its contractual terms with Armor while incarcerated individuals were dying and the court-appointed monitor was providing routine reports relative to Armor's failures. Aid. Id. at 21.

Milwaukee County replies that the clarification offered by the plaintiffs does nothing to narrow the scope of the proposed topic. Dkt. No. 172 at 10. The County states that the entire contract was about providing care to incarcerated individuals in the jail and providing the staffing to do so, so limiting Topic 2 to

12

those subjects does not narrow the proposed area of inquiry. Id. In addition, the County states that "lack of care" is undefined and could mean different things to different people and in different contexts. Id. The County states that it is not clear how Topic 2, even as clarified by plaintiffs, relates to the circumstances involving Collins. Id. The County also contends that any violations of the contract between Armor and the County would not have put the County on notice that Armor was violating the constitutional rights of incarcerated individuals. Dtk. No. 172 at 5-6

Requiring Milwaukee County to designate an individual to testify about when the County became aware that Armor was violating the terms of the contract, even as narrowed by the plaintiffs to the "contractual issues related to lack of care and failure to maintain proper staffing," is an inquiry so broad as to constitute an undue burden on the County. The plaintiffs' Monell claim does not involve any claim related to the contract between Milwaukee County and Armor for Armor to provide medical care. Moreover, as discussed below, the plaintiffs' other proposed deposition topics involve information related to medical care about which the plaintiffs may depose the County under Rule 30(b)(6), and Topic 6 seeks information related to the contract with Armor. Topic 2, even as narrowed by counsel's June 10, 2024 email, is overly broad and does not meet Rule 30(b)(6)'s requirement to describe the topic with reasonable particularity. The court will grant Milwaukee County's motion for protective order as to Topic 2.

13

> 2. *Topic 3: What, if anything, the County did to oversee whether Armor was fulfilling the terms and conditions imposed by the Christensen consent decree relative to medical services provided to inmates in the Jail*

Milwaukee County contends that Topic 3 addresses a subject that is not relevant to the plaintiffs' claims. Dkt. No. 164 at 14. The County states that most, if not all, of the terms of the consent decree are irrelevant to the plaintiffs' Monell claims. Id. at 5. The County asserts that Topic 3 purports to require the County's designee to be prepared to discuss every aspect of Armor's compliance with every provision of the consent decree relating to the healthcare program in the jail over a six-year period and every aspect of the County's oversight of Armor's compliance, regardless of any connection to the events at issue relating to Collins's death. Id. The County contends that Topic 3 is not phrased with the reasonable particularity required by Rule 30(b)(6) and is so broad as to make it impossible for a designee of the County to adequately prepare to give deposition testimony. Id. at 16.

The plaintiffs respond that they want to question a County designee about the consent decree to establish that the County had notice of Armor's pervasive harmful policies and practices in the jail. Dkt. No. 169 at 22. The plaintiffs state that they plan to introduce substantive proof that the noticed problems actually existed, such as evidence of staffing issues at the jail and deaths of incarcerated individuals at the jail relating to Armor's inadequate provision of medical care. Id. at 22. They assert that repeated violations of the consent decree may be evidence of a widespread and harmful custom or

14

practice. Id. According to the plaintiffs, the consent decree has been violated multiple times and Dr. Shansky's reports indicate that Armor consistently struggled to meet medical staffing level expectations and process sick call slips in a timely manner. Id. They state that "it is clear that a harmful custom/practice was occurring and the Plaintiffs have a right to try and support their Monell claims by finding out what the County knew about it and what the County did about it." Id.

Finally, the plaintiffs contend that Topic 3 is not overly broad, and they point out that counsel clarified that Topic 3 was intended to target "[o]nly issues related to inadequate medical care and staffing deficiencies in violation of the Consent Decree." Id. at 22-23. They state that a Milwaukee County designee would need to testify about only two things regarding Topic 3: (1) issues relating to incarcerated individuals receiving inadequate medical care in the jail, and (2) issues relating to staffing deficiencies in the jail. Id. at 23. The plaintiffs state that a County designee would not need to be prepared to address all aspects of Armor's operations in the jail and that after plaintiff's clarification, Topic 3 meets the reasonable particularity standard. Id.

Milwaukee County replies that the clarification offered by the plaintiffs "is anything but." Dkt. No. 172 at 13. The County states that the phrase "inadequate medical care and staffing deficiencies" is not a meaningful limitation. Id. The County states that the plaintiffs cannot rely on the reports prepared by Shansky under the consent decree to sustain a valid Monell claim against the County. Dkt. No. 172 at 5. It asserts that to the extent the plaintiffs

15

intend to rely on the reports as proof of notice to the County, the reports do not connect deficiencies identified by Shansky under the consent decree to any of the deaths in the jail cited by the plaintiffs, let alone to Collins's death. Id.

While consent decrees are inadmissible to prove or disprove the validity or amount of a disputed claim, they *are* admissible to prove notice. Wesley by Wesley v. Armor Corr. Health Servs., Case No. 19-cv-918-bhl, 2022 WL 16748861, at *5 (Sept. 7, 2022) (citing United States v. Austin, 54 F.3d 394, 400 (7th Cir. 1995)). Topic 3 seeks information about what Milwaukee County did *to oversee* whether Armor was fulfilling the terms of the consent decree and the plaintiffs clarified that the topic sought information related only to inadequate medical care and staffing deficiencies in violation of the consent decree. The plaintiffs are proceeding on a Monell claim related to the Consent Decree—repeated violations of the consent decree could be relevant to the plaintiffs' Monell claims, as described in Wesley. The court will deny the County's motion for protective order related to Topic 3.

> 3. *Topic 5: What issues, if any did the County become aware of, and when, relative to Armor's failure to provide adequate medical care to inmates at the Jail*
>
> *Topic 6: What, if anything, the County did in relation to its contract with Armor upon learning about the deaths of multiple inmates at the County jail during Armor's tenure as the health care provider*

Milwaukee County contends that the premise of Topics 5 and 6 is flawed because the plaintiffs cannot sustain a Monell claim against the County based on the general assertion that Armor provided inadequate medical care to incarcerated individuals at the jail or that other persons died during the years

16

Armor provided medical care at the jail. Dkt. No. 164 at 17. The County states that such "broad, generalized assertions, untethered to the specific facts of a case are categorically insufficient to satisfy a plaintiff's burden of proving that a policy or custom on the part of the defendant municipality was a moving force behind the violation of his or her constitutional rights." Id. The County also contends that Topics 5 and 6 "are grossly overbroad, as phrased." Id. at 18. Regarding Topic 5, the County contends that the plaintiffs do not define what they mean by "adequate medical care", and that Topic 5 does not "focus on a specific type (or types) of medical care that might somehow be related to the medical conditions presented by Collins or the care provided to him while he was in the jail." Id. The County also states that "Topic 6 does nothing to identify what aspects of the medical care provided by Armor to other individuals who died while in custody plaintiffs allege to be inadequate or to define what specific aspects of the Armor contract that plaintiffs expect the County's designee or designees to be prepared to address relative to those inmates or their deaths, let alone to do so in a way that is tied to the facts relating to Collins' death." Id.

The plaintiffs respond that they do not argue they can sustain their Monell claims based solely on allegations of inadequate medical care and multiple jail deaths. Dkt. No. 169 at 24. The plaintiffs state that Topics 5 and 6 address Milwaukee County's notice and awareness of a potentially harmful custom or practice. Id. The plaintiffs state that the policymakers must have been aware of the risk created by the custom or practice and must have failed

17

to take appropriate steps to protect the plaintiff. Id. According to the plaintiffs, Topics 5 and 6 are the vehicles for the plaintiffs to show whether the County was aware of inadequate medical care in the jail and what steps the County took as a result of the inadequate care and deaths. Id. The plaintiffs also contend that Topics 5 and 6 are not overly broad and that counsel's June 10, 2024 email clarified that the topics are meant to address "[o]nly issues related to inadequate medical care where in-custody deaths occurred." Id. at 25. The plaintiffs state that this significantly narrows down the scope of Topics 5 and 6, and that the County's concerns have been addressed. Id.

Milwaukee County replies that the plaintiffs' proposed "clarification" offers no real assistance and that the "content-free" phrase "issues relating to inadequate medical care" is undefined and is not limited or even tied to specific issues relating to Collins's death. Dkt. No. 172 at 14. The County also contends that the plaintiffs' general assertions that Armor was the "subject of controversy," was a "bad actor" or had legal troubles in other cases or elsewhere offer no support for a Monell claim against Armor or the County with respect to Collins's death. Id. at 2-3. The County contends that simply citing to other deaths that occurred at the jail at some point between 2016 and the present does nothing to advance a viable Monell claim against the County and that on the face of plaintiffs' submissions, there is no connection between the four deaths highlighted by plaintiffs that occurred prior to Collins's death. Id. at 3.

18

Topics 5 and 6, as narrowed by counsel's June 10, 2024 email, seek information relevant to the plaintiffs' Monell claims. Milwaukee County contends that the plaintiffs cannot prevail on the merits of their Monell claims, but this case is not at the summary judgment stage. The law governing discovery permits the plaintiffs to obtain information relevant to their claims. Topics 5 and 6, as narrowed, meet Rule 30(b)(6)'s reasonable particularity requirement. The court will deny the County's motion for protective order as to Topics 5 and 6.

In sum: The court will grant Milwaukee County's motion for protective order as to Topic 2. The court will deny the motion as to Topics 3, 5 and 6, as narrowed by counsel's June 10, 2024 email. The court previously vacated the deadline for the parties to file motions for summary judgment. Dkt. No. 187. The court will set a new deadline below.

### III. Conclusion

The court **GRANTS IN PART AND DENIES IN PART** defendant Milwaukee County's motion for protective order. Dkt. No. 162. The court **GRANTS** the motion as to Topic 2; the court **DENIES** the motion as to Topics 3, 5 and 6, as narrowed by plaintiffs' June 10, 2024 email.

The court **GRANTS** plaintiffs' first motion for leave to file supplemental declaration in sur-reply. Dkt. No. 175.

The court **GRANTS** plaintiffs' second motion for leave to file second supplemental declaration. Dkt. No. 179.

The court **ORDERS** that the deadline for the plaintiffs to depose Milwaukee County is **March 14, 2025**.

The court **ORDERS** that the deadlines for parties to file motions for summary judgment is **April 18, 2025**.

Dated in Milwaukee, Wisconsin this 12th day of February, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

20

Case 2:21-cv-01438-PP   Filed 02/12/25   Page 20 of 20   Document 189